**No. 15-15579**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MOHAMMED RAHMAN, individually, and on behalf
of other members of the public similarly situated,

*Plaintiff-Appellant,*

v.

MOTT'S LLP,

*Defendant-Appellee.*

On Appeal from the U.S. District Court
for the Northern District of California
in Case No. 13-cv-03482-SI (Illston, J.)

## BRIEF OF THE CHAMBER OF COMMERCE
## OF THE UNITED STATES OF AMERICA AS *AMICUS CURIAE*
## IN SUPPORT OF DEFENDANT-APPELLEE

Kate Comerford Todd
Warren Postman
U.S. CHAMBER LITIGATION
    CENTER, INC.
1615 H Street, N.W.
Washington, DC 20062
(202) 463-5337

Andrew J. Pincus
Archis A. Parasharami
Daniel E. Jones
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006
(202) 263-3000

*Counsel for* Amicus Curiae *the Chamber of Commerce
of the United States of America*

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

The Chamber of Commerce of the United States of America is a non-profit corporation organized under the laws of the District of Columbia.  It has no parent corporation.  No publicly held corporation owns ten percent or more of its stock.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................... iii

INTRODUCTION AND SUMMARY OF THE ARGUMENT ................. 3

ARGUMENT ...................................................................... 9

I.     The District Court Properly Rejected Plaintiff's Request To Certify A Liability-Only Class Under Rule 23(c)(4) ...................... 9

     A.     Rule 23(c)(4) Is A Tool For Managing Class Actions Properly Certified Under Rule 23(b), Not A New, Standardless Class Action Category ................................... 12

          1.     Rule 23's Structure And Text ..................................... 12

          2.     The Interpretation Of Rule 23(c)(4) Urged By Plaintiff Would Render Rule 23(b)(3)'s Standards Meaningless And Allow Certification Of Virtually Any Putative Class Action ......................................... 18

     B.     Certification Of Issue Class Actions Without Regard For Rule 23(b) Would Invite A Flood Of Vexatious Litigation ............................................................... 21

II.    The District Court's Order Can Be Affirmed On The Alternative Ground That The Proposed Class Is Not Ascertainable ................................................................. 23

CONCLUSION .................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Sur. Co. v. Baldwin,*
  287 U.S. 156 (1932) ................................................................... 24

*Amador v. Baca,*
  299 F.R.D. 618 (C.D. Cal. 2014) ............................................. 10

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ............................................. 3, 12, 13, 18

*Astiana v. Ben & Jerry's Homemade, Inc.,*
  2014 WL 60097 (N.D. Cal. Jan. 7, 2014) ............................... 34

*Astiana v. Kashi Co.,*
  291 F.R.D. 493 (S.D. Cal. 2013) .............................................. 30

*Berger v. Home Depot USA, Inc.,*
  741 F.3d 1061 (9th Cir. 2014) .......................................... 12, 13

*Blain v. Smithkline Beecham Corp.,*
  240 F.R.D. 179 (E.D. Pa. 2007) ............................................. 20

*Blue Chip Stamps v. Manor Drug Stores,*
  421 U.S. 723 (1975) .................................................................. 21

*Brecher v. Republic of Argentina,*
  --- F.3d ----, 2015 WL 5438797 (2d Cir. Sept. 16, 2015) ............... 27, 30

*Bridge v. Phoenix Bond & Indem. Co.,*
  553 U.S. 639 (2008) .................................................................. 26

*Carrera v. Bayer Corp.,*
  727 F.3d 300 (3d Cir. 2013) ..................................... 25, 26, 30

*Castano v. Am. Tobacco Co.,*
  84 F.3d 734 (5th Cir. 1996) ..................................................... 20

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Comcast Corp. v. Behrend,*
    133 S. Ct. 1426 (2013) ........................................................................ 3

*In re ConAgra Foods, Inc.,*
    302 F.R.D. 537 (C.D. Cal. 2014) ................................................. 10, 11

*Coopers & Lybrand v. Livesay,*
    437 U.S. 463 (1978) .......................................................................... 21

*Duchek v. Jacobi,*
    646 F.2d 415 (9th Cir. 1981) ....................................................... 12, 17

*Forcellati v. Hyland's, Inc.,*
    2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ....................................... 30

*Goldberg v. Kelly,*
    397 U.S. 254 (1970) .......................................................................... 25

*Grannis v. Ordean,*
    234 U.S. 385 (1914) .......................................................................... 24

*In re Hotel Tel. Charges,*
    500 F.2d 86 (9th Cir. 1974) ............................................................... 33

*ICC v. Louisville & Nashville R.R.,*
    227 U.S. 88 (1913) ............................................................................ 25

*Jacob v. Duane Reade, Inc.,*
    293 F.R.D. 578 (S.D.N.Y. 2013) ........................................................ 11

*Jones v. ConAgra Foods, Inc.,*
    No. 14-16327 (9th Cir. Jan. 28, 2015) ................................................. 6

*Karhu v. Vital Pharm., Inc.,*
    2014 WL 815253 (S.D. Fla. Mar. 3, 2014) .................................... 28, 30

*Lilly v. Jamba Juice Co.,*
    308 F.R.D. 231 (N.D. Cal. 2014) ....................................................... 30

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Lindsey v. Normet,*
405 U.S. 56 (1972) ............................................................. 24

*Marcus v. BMW of N. Am., LLC,*
687 F.3d 583 (3d Cir. 2012) ............................................ 28

*Mazza v. Am. Honda Motor Co.,*
666 F.3d 581 (9th Cir. 2012) .......................................... 14

*McCrary v. Elations Co.,*
2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ............... 29, 30

*McLaughlin v. Am. Tobacco Co.,*
522 F.3d 215 (2d Cir. 2008) ............................................ 26

*Mullins v. Direct Digital, LLC,*
795 F.3d 654 (7th Cir. 2015) ........................................... 30

*In re New Motor Vehicles Canadian Export Antitrust Litig.,*
522 F.3d 6 (1st Cir. 2008) ............................................... 18

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
259 F.3d 154 (3d Cir. 2001) ............................................ 18

*Perez v. Metabolife Int'l, Inc.,*
218 F.R.D. 262 (S.D. Fla. 2003) ..................................... 28

*Philip Morris USA, Inc. v. Scott,*
131 S. Ct. 1 (2010) ........................................................... 25

*Poertner v. Gillette Co.,*
No. 6:12-cv-00803 (M.D. Fla. Apr. 22, 2014) ............... 31, 32

*In re POM Wonderful LLC,*
2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) ................ 33

*Red v. Kraft Foods, Inc.,*
2012 WL 8019257 (C.D. Cal. Apr. 12, 2012) ................. 34

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Ries v. Ariz. Beverages USA LLC,*
  287 F.R.D. 523 (N.D. Cal. 2012) ....................................................... 30

*Saavedra v. Eli Lilly & Co.,*
  2014 WL 7338930 (C.D. Cal. Dec. 18, 2014) ......................... 10, 11, 20

*Sacred Heart Health Sys., Inc. v. Humana Military
  Healthcare Servs., Inc.,*
  601 F.3d 1159 (11th Cir. 2010) ......................................................... 26

*Sepulveda v. Wal-Mart Stores, Inc.,*
  237 F.R.D. 229 (C.D. Cal. 2006) ....................................................... 10

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,*
  559 U.S. 393 (2010) ........................................................................... 21

*Steering Comm. v. Exxon Mobil Corp.,*
  461 F.3d 598 (5th Cir. 2006) ............................................................. 18

*Thorn v. Jefferson-Pilot Life Ins. Co.,*
  445 F.3d 311 (4th Cir. 2006) ............................................................. 18

*United States v. Armour & Co.,*
  402 U.S. 673 (1971) ........................................................................... 24

*United States v. Tohono O'Odham Nation,*
  131 S. Ct. 1723 (2011) ....................................................................... 19

*Valentino v. Carter-Wallace, Inc.,*
  97 F.3d 1227 (9th Cir. 1996) ................................................... 9, 10, 11

*Vega v. T-Mobile USA, Inc.,*
  564 F.3d 1256 (11th Cir. 2009) ......................................................... 18

*Wal-Mart Stores, Inc. v. Dukes,*
  131 S. Ct. 2541 (2011) ...................................................................... 3, 7

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Xavier v. Philip Morris USA Inc.,*
    787 F. Supp. 2d 1075 (N.D. Cal. 2011) ................................... 26, 27, 28

## Statutes, Rules and Regulations

28 U.S.C. § 2072(b) ........................................................................ 8, 23, 31

Class Action Fairness Act of 2005,
    Pub. L. No. 109-2 § 2(a)(3), 119 Stat. 4 ............................................... 31

Fed. R. App. P. 29(c)(5) ................................................................................ 1

Fed. R. Civ. P. 23 .................................................................................. *passim*

Fed. R. Civ. P. 23(a) ............................................................................. *passim*

Fed. R. Civ. P. 23(b) ............................................................................. *passim*

Fed. R. Civ. P. 23(c) ............................................................................. *passim*

## Other Authorities

Brian T. Fitzpatrick, *An Empirical Study of Class Action
    Settlements and Their Fee Awards*, 7 J. Empirical Legal
    Stud. 811 (Dec. 2010) ........................................................................ 22

Henry J. Friendly, *Federal Jurisdiction: A General View* 120
    (1973) ................................................................................................. 21

Jon Romberg, *Half a Loaf Is Predominant and Superior to
    None: Class Certification of Particular Issues Under Rule
    23(c)(4)(A)*, 2002 Utah L. Rev. 249 ................................................. 5, 20

Joseph M. McLaughlin, *McLaughlin on Class Actions*
    (11th ed. 2014) ................................................................................. 29

Mayer Brown LLP, *Do Class Actions Benefit Class
    Members?: An Empirical Analysis of Class Actions* (Dec.
    11, 2013) ...................................................................................... 32, 33

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

Richard L. Marcus, *They Can't Do That, Can They? Tort Reform Via Rule 23*, 80 Cornell L. Rev. 858 (1995) ........................... 30

## INTEREST OF THE *AMICUS CURIAE*

The Chamber of Commerce of the United States of America is the world's largest business federation. The Chamber represents 300,000 direct members and indirectly represents the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country.[1]

The Chamber represents the interests of its members in matters before the courts, Congress, and the Executive Branch. To that end, the Chamber regularly files *amicus curiae* briefs in cases that raise issues of vital concern to the Nation's business community, including cases addressing the requirements for class certification. *See* http://www.chamberlitigation.com/cases/issue/class-actions.

Many of the Chamber's members and affiliates are defendants in class actions. They therefore have a keen interest in ensuring that courts rigorously analyze, consistent with the text of Federal Rule of Civil Procedure 23 and the requirements of due process, whether a

---

[1]     Pursuant to Federal Rule of Appellate Procedure 29(c)(5), *amicus* affirms that no counsel for a party authored this brief in whole or in part and that no person other than *amicus*, its members, or its counsel has made any monetary contributions intended to fund the preparation or submission of this brief. All parties have consented to the filing of this brief.

plaintiff has satisfied the prerequisites for class certification before certifying a class.

This case implicates at least two important due process issues. First, whether Rule 23(c)(4) may be used as an end-run around the critical due-process safeguards for defendants and absent class members provided by Rule 23(b); and second, whether a class can be certified when the identity of its members cannot be reliably ascertained unless the proceedings were to devolve into an unmanageable series of individualized mini-trials.

The answer to both questions is "no," and the result of a contrary conclusion would be a flood of time-consuming, expensive, and abusive litigation that benefits no one except the lawyers who bring and defend the suits. The Chamber therefore has a strong interest in this case and in affirmance by this Court of the district court's denial of class certification.

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

The Supreme Court has repeatedly recognized that abuse of the class action device imposes deeply unfair burdens on both absent class members and defendants, and it has construed Rule 23 in a manner that comports with due process to avoid that result. *E.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2559 (2011); *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 629 (1997). Because class actions are an "exception to the usual rule" that cases are litigated individually, it is critical that courts apply a "rigorous analysis" to the requirements governing class certification before a lawsuit is approved for class treatment. *Dukes*, 131 S. Ct. at 2550-51 (quotation marks omitted).

In this case, interpreting the requirements for class certification consistent with due process requires affirmance of the district court's denial of class certification, for at least two reasons.

*First*, in rejecting plaintiff's ploy to use Rule 23(c)(4) to carve out for class treatment certain questions of liability only, the district court properly considered whether the class action is rendered unmanageable by the numerous individualized issues that preclude plaintiff's damages

claims. According to plaintiff, however, "for particular issues to be certified using Rule 23(c)(4), the requirements of Rules 23(a) and (b) need only be satisfied with respect to those issues" (Op. Br. 17)—rather than with respect to his putative class as a whole.

Plaintiff's approach to certification of an issue class cannot be squared with the text, structure, or purpose of Rule 23. Rule 23(a) sets forth the prerequisites to bringing any class action; Rule 23(b) defines the types of class actions and the specific requirements for maintaining each of them; and Rule 23(c) identifies the procedures for moving forward with a class action once the district court has determined that class certification is proper under Rules 23(a) and (b).

Accordingly, Paragraph 23(c)(4) does not create a separate, standardless category of class action; it is merely a tool available to the district courts for managing class actions that have already met the requirements of Rule 23(b) and been certified. If Rule 23(c)(4) had been intended as a separate type of class action subject to special requirements, it would be an additional subsection of Rule 23(b), not part of Rule 23(c).

Moreover, under the approach urged by plaintiff, certification of an issue class action is almost trivially easy and would render the limits imposed by Rule 23(b)(3) meaningless. All that would-be class counsel need to do is identify a single issue of law or fact that is common to the class—a standard that even the most diffuse, unmanageable class claims are likely to satisfy. The normal safeguard against improper certification of a class action for monetary damages is the predominance requirement, which operates to ensure that the proposed class is sufficiently cohesive to permit representative litigation of the claims in a single action. But by definition, the predominance requirement is satisfied when an issue class action is proposed, as all individualized issues have been severed and rendered irrelevant. *See* Jon Romberg, *Half a Loaf Is Predominant and Superior to None: Class Certification of Particular Issues Under Rule 23(c)(4)(A)*, 2002 Utah L. Rev. 249, 281 (touting issue classes because they allow all individualized issues to be "severed away cleanly and painlessly").

Not only is that circumvention of Rule 23(b) inconsistent with the structure of Rule 23, but it would result in certification of classes that would either nullify the essential due-process protections that the Rule

is meant to secure or create settlement pressure without advancing the resolution of an actual controversy. Because of the exponentially larger stakes of class actions and the huge expense of defending such suits, class certification places tremendous pressure on defendants to settle even meritless claims. Accordingly, this Court should reaffirm the principle that certification of a class when plaintiffs bring damages claims is available only when the stringent predominance and superiority requirements of Rule 23(b)(3) are met.

*Second*, the district court's order can and should be affirmed on the alternative ground that the proposed class flunks the ascertainability requirement imposed by Rule 23.[2] Here, plaintiff has proposed a consumer class whose members will be effectively impossible to identify. The putative class is composed of California residents who, dating back to 2009, purchased certain Mott's apple juice bearing the statement "No Sugar Added" on its label. E.R. 5. But it is not possible to use objective documentation to determine whether a particular person

---

[2] In another appeal pending before this Court, we have addressed in greater detail the contours and due-process underpinnings of the ascertainability requirement. *See* Am. Br. of Chamber of Commerce of the U.S., Dkt. No. 43, *Jones v. ConAgra Foods, Inc.*, No. 14-16327 (Jan. 28, 2015).

is (or is not) a member of the proposed class. The reason is self-evident: Consumers typically do not keep receipts or packaging from food products (or other similar products) that likely were purchased or consumed years ago.

If this were an individual-plaintiff case, there is no doubt that each plaintiff would have to prove at trial that he or she purchased the challenged product and was injured as a result. Due process insists that the defendant, in turn, would be permitted to challenge the plaintiff's evidentiary showing, including through cross-examination, and to have a court or jury resolve any factual disputes.

Defendants' due process right to challenge an individual's eligibility to recover cannot be diminished merely because a plaintiff has chosen to file a class action rather than pursue an individual action. A Rule 23 class action is the sum of the individual class members' claims within it—nothing more. Indeed, as the Supreme Court has made clear, courts may not skirt defendants' due process rights by certifying a class "on the premise that [the defendant] will not be entitled to litigate its * * * defenses to individual claims." *Dukes*, 131 S. Ct. at 2561. To do so would violate the Rules Enabling Act, which

embodies the due process principle that procedural rules, like Rule 23, cannot "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b).

In concluding that the proposed class was nonetheless ascertainable, the district court relied on statements made by other district courts in this Circuit that the ascertainability requirement should be relaxed in order to facilitate consumer class actions. But assuming that class actions are to be promoted at every turn puts the cart before the horse: Class actions are a means of dispute resolution, not an end in themselves. Defendants' due process rights cannot be vitiated in service of the class-action device. Moreover, the ordinary justification for class actions—that they offer benefits for class members who would not pursue relief on their own—is simply inapplicable to cases involving class members who can't be identified; when such class actions are certified, only the attorneys and a handful of class members actually receive benefits.

## ARGUMENT

**I.    The District Court Properly Rejected Plaintiff's Request To Certify A Liability-Only Class Under Rule 23(c)(4).**

Relying on this Court's decision nearly 20 years ago in *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996), plaintiff contends that selected liability issues can be walled-off and given class treatment under Rule 23(c)(4) even when the putative class's claims are not eligible for class certification because they fail the predominance requirement of Rule 23(b)(3). *See* Op. Br. 17-26. The reliance on *Valentino* is misplaced and the text and structure of Rule 23 make clear that paragraph 23(c)(4) does not override the requirements of 23(b)(3).

The *Valentino* Court remarked, in the course of ***reversing*** a grant of class certification for inadequate consideration of the predominance requirement, that "[e]ven if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in ***appropriate cases*** to isolate the common issues under Rule 23(c)(4)(A)

and proceed with class treatment of these particular issues." 97 F.3d at 1234 (emphasis added).[3]

Even if that remark were a holding rather than dictum, the Court in *Valentino* never specified the categories of cases in which certification of an issue class could be "appropriate" because the question was not before it. As courts in this Circuit have recognized, "'it was unnecessary [for the *Valentino* Court] to address that question in view of the numerous deficiencies in the district court's certification order.'" *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 581 (C.D. Cal. 2014) (quoting *Amador v. Baca*, 299 F.R.D. 618, 636 (C.D. Cal. 2014)) (quotation marks and alterations omitted); *see also Saavedra v. Eli Lilly & Co.*, 2014 WL 7338930, at *10 (C.D. Cal. Dec. 18, 2014) ("[N]either the Ninth Circuit nor the Supreme Court has established when certification of an issue class is appropriate."). *Cf. Sepulveda v. Wal-Mart Stores, Inc.*, 237 F.R.D. 229, 250 (C.D. Cal. 2006) ("Rule 23(c)(4)(A) does not permit a court to bypass the requirements of Rule 23(b)(3) entirely simply by defining the issues for certification narrowly enough."), *aff'd*, 464 F. App'x 636 (9th Cir. 2011).

---

[3]   At the time *Valentino* was decided, what is now Rule 23(c)(4) was located in Rule 23(c)(4)(A). *See* pp. 16-17, *infra*.

Here, the district court concluded that certification of a class was not appropriate because it would not "'materially advance the disposition of the litigation as a whole.'" E.R. 15 (quoting *Jacob v. Duane Reade, Inc.*, 293 F.R.D. 578, 589 (S.D.N.Y. 2013)); *see also, e.g.*, *Saavedra*, 2014 WL 7338930, at *10-11 (denying certification of an issue class because it "would not advance the resolution of th[e] litigation"); *In re ConAgra Foods*, 302 F.R.D. at 581 (same). Mott's brief explains in detail (at 13-30) why the district court's conclusion on that point was correct, and affirmance is warranted on that ground alone.

But the denial of certification was correct for another reason: Plaintiff's claim that Rule 23(c)(4) permits an end-run around the stringent requirements of Rule 23(b)(3) is wrong, because it is inconsistent with the text and structure of Rule 23 and would nullify the essential due-process protections that Rule 23(b) secures—and therefore leads to class certifications that plainly would not be "appropriate." *Valentino*, 97 F.3d at 1234.

### A. Rule 23(c)(4) Is A Tool For Managing Class Actions Properly Certified Under Rule 23(b), Not A New, Standardless Class Action Category.

Rule 23(c)(4) states: "When appropriate, an action may be brought or maintained as a class action with respect to particular issues." This provision does not exist in isolation. Rather, it is a subpart of Rule 23(c), which identifies the various procedures for managing a class action. Rule 23(c) is, in turn, a subpart of Rule 23 as a whole, which sets the terms and conditions for class actions. The subparts of a Federal Rule of Civil Procedure on a single subject must be construed "in pari materia." *Duchek v. Jacobi*, 646 F.2d 415, 417 (9th Cir. 1981). Paragraph 23(c)(4) cannot plausibly be construed to authorize a so-called issue class action when Rule 23(b)(3) bars class certification.

### 1. Rule 23's Structure And Text.

a. Rule 23(a) defines four "[p]rerequisites" to bringing a class action—the familiar numerosity, commonality, typicality, and adequacy requirements. Fed. R. Civ. P. 23(a); *see also, e.g.*, *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1067 (9th Cir. 2014). These "threshold requirements [are] applicable to all class actions." *Amchem*, 521 U.S. at 613.

If the party seeking class certification satisfies the Rule 23(a) prerequisites, it must then also "show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614; *see also Berger*, 741 F.3d at 1067. These provisions of Rule 23 define the three "[t]ypes" of permissible class actions and the special additional requirements that must be satisfied to maintain each of them.

- Rule 23(b)(1) authorizes certification of a class when "separate actions by or against individual class members would risk establishing 'incompatible standards of conduct for the party opposing the class,' * * * or would 'as a practical matter be dispositive of the interests' of nonparty class members 'or substantially impair or impede their ability to protect their interests,'" such as when "numerous persons make claims against a fund insufficient to satisfy all claims." *Amchem*, 521 U.S. at 614 (quoting Fed. R. Civ. P. 23(b)(1) & 1966 advisory committee's note).

- Rule 23(b)(2) authorizes certification of a class to seek "declaratory or injunctive relief where 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.'" *Amchem*, 521 U.S. at 614 (quoting Fed. R. Civ. P. 23(b)(2)).

- Rule 23(b)(3) authorizes class actions, including damages class actions, that are not covered by (b)(1) or (b)(2), but only if the court finds that common issues predominate and that treatment of the claims on a class-wide basis would be superior to individual actions. *Amchem*, 521 U.S. at 615.

Damages actions are thus eligible for class treatment only if the district court undertakes a rigorous analysis and finds that the plaintiff met the four threshold requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation) ***and*** Rule 23(b)(3)'s two additional elements of predominance and superiority. *See, e.g.*, *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588-89 (9th Cir. 2012).

Rule 23(c) sets forth, in logical order, the procedures and mechanisms for moving forward with a class action:

- Rule 23(c)(1) calls for the certification decision to take place as soon as is practicable and requires that the certification order define the class and appoint class counsel.

- Rule 23(c)(2) specifies the notice requirements for (b)(3) damages classes and authorizes the district courts to require the provision of notice to (b)(1) and (b)(2) classes when appropriate.

- Rule 23(c)(3) provides that any judgment in a certified class action applies to all the class members, thus clarifying the preclusive effects resulting from the order certifying the class.

- Rules 23(c)(4) and (5) together provide management tools, authorizing the district courts to permit class actions to be maintained "with respect to particular issues" or to divide a class into subclasses.

**b.**     Rule 23(c)(4)'s placement in the overall structure of Rule 23 confirms that it is not an alternative to the requirements of Rule 23(b), as plaintiff contends, but instead is merely a tool that the district courts may employ in managing class actions that meet the prerequisites of Rule 23(a) ***and*** the additional requirements for at least one of the three types of class actions defined in Rule 23(b).

*First*, Rule 23(c)(4) provides simply that, "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." That text confers upon the district court authority to manage an action that satisfies Rule 23(b)(3)'s predominance requirement, but encompasses one or more issues that cannot be resolved on a class-wide basis. The district court in that situation may issue an order providing that the action may be maintained as a class action with respect to the common issues only. That construction is consistent with the other paragraphs of 23(c), each of which address procedures for handling class actions that are eligible for certification under 23(b).

*Second*, Rule 23(c)(4) does not describe an "issue class action" as a separate type of class action; it does not state the requirements for maintaining an issue class action; it does not set forth any limitations

on issue class actions. It therefore differs starkly from 23(b)(1), (2), and (3), each of which contains specific, detailed requirements for certification.

And Rule 23(c)(2), which specifies the notice requirements for class actions, address (b)(3) damages classes and the option of notice for (b)(1) and (b)(2) classes. But it does not address notice for a "(c)(4)" class—again undermining plaintiff's interpretation.

If the Rules Committee had intended to establish a fourth type of class action, it would not have buried this fourth type of class action in Rule 23(c), among the procedures and case-management tools for proceeding with a certified class action. Instead, the Committee logically would have included the issue class action as a fourth subpart of Rule 23(b), and would have followed the pattern of Rule 23(b)(1)-(3) in setting forth the specific requirements that must be met in order to maintain one.

*Third*, the history of Rule 23(c)(4) confirms these conclusions. Until 2007, the authorization to certify classes for particular issues (now Rule 23(c)(4)) and the authorization to certify subclasses (now Rule 23(c)(5)) were combined twins—they appeared together as subparts (A) and (B) of Rule 23(c)(4)—thus underscoring their role as

case-management tools to permit the district courts to organize class actions to run smoothly. (The change in 2007 to give them separate Arabic numerals under Rule 23(c) was "part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules"; the change was "intended to be stylistic only." Fed. R. Civ. P. 23, 2007 advisory committee's note.)

Given this history, the two provisions must be read in pari materia. *Cf. Duchek*, 646 F.2d at 417 (engaging in "an in pari materia construction" of Rules 69(a) and 70, both of which relate to the enforcement of judgments). If Rule 23(c)(4) creates an "issue class action" distinct from the three types of class actions set forth in Rule 23(b), then Rule 23(c)(5) must similarly authorize a "subclass action"— whatever that might be. But no decision of which we are aware holds that the ability to employ subclasses to manage a class action entirely obviates the need to satisfy Rule 23(b). Rule 23(c)(4) ought not be interpreted that way either.

**2.    The Interpretation Of Rule 23(c)(4) Urged By Plaintiff Would Render Rule 23(b)(3)'s Standards Meaningless And Allow Certification Of Virtually Any Putative Class Action.**

A damages class action typically may be certified only if the putative class representative demonstrates, among other things, compliance with Rule 23(b)(3)'s predominance requirement. As the Supreme Court explained in *Amchem*, the "mission" of the predominance requirement—which winnows out classes in which the members' claims are riddled with factual and legal idiosyncrasies that defeat class unity—is to "assure the class cohesion that legitimizes representative action in the first place." 521 U.S. at 623.

The predominance requirement is a "demanding" one that ensures that "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623-24; *see also, e.g.*, *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1279 (11th Cir. 2009); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 20 (1st Cir. 2008); *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 603 (5th Cir. 2006); *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006); *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 186 (3d Cir. 2001).

Plaintiff's construction of 23(c)(4) renders 23(b)(3)'s limitations meaningless. Any case that does not satisfy (b)(3) can nonetheless be certified as a (c)(4) "issues class." Why would the drafters have included (b)(3) if actions that do not satisfy its requirements nonetheless may be certified? Plaintiff's interpretation thus violates the fundamental canon that "[c]ourts should not render statutes nugatory through construction." *United States v. Tohono O'Odham Nation*, 131 S. Ct. 1723, 1730 (2011).[4]

As long as the defendant has multiple customers or many employees, a creative lawyer almost invariably will be able to identify at least one common legal issue and/or some factual issue that may be subject to common proof. A court could then always "sever issues until the remaining common issue predominates over the remaining

---

[4]      Plaintiff cannot argue that the (b)(3) requirements may be applied on an "issue-by-issue" basis, rather than by considering the entire case. Rule 23(b)(3) necessarily considers predominance and superiority of a class action by looking at the entire "controversy." The Rule expressly states that a damages class action cannot be certified unless class adjudication is "superior to other available methods for fairly and efficiently adjudicating **the controversy**." Fed. R. Civ. P. 23(b)(3) (emphasis added). And the Rule's predominance requirement, by definition, requires comparing the number of common issues to the other remaining issues in the controversy. *See id.* (requiring that "questions of law or fact common to class members predominate over any questions affecting only individual members").

individual issues," thus "eviscerat[ing] the predominance requirement." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996); *see also, e.g.*, *Saavedra*, 2014 WL 7338930, at *10 (citing *Castano* in noting that the "problem posed by the certification of issue classes is that [they] could be used as an end-run around Rule 23(b)(3)'s predominance requirement").

Even proponents of issue class actions acknowledge that this approach "fundamentally revamp[s] the nature of class actions." Romberg, *Half a Loaf*, 2002 Utah L. Rev. at 263. And not for the better. If plaintiff's interpretation of Rule 23(c)(4) were adopted, certification of issue classes will become routine—and the number of abusive class actions filed will increase. Instead, "[t]he proper interpretation of the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule that allows courts to sever the common issues for a class trial." *Castano*, 84 F.3d at 745 n.21; *accord, e.g.*, *Blain v. Smithkline Beecham Corp.*, 240 F.R.D. 179, 190 (E.D. Pa. 2007).

**B.    Certification Of Issue Class Actions Without Regard For Rule 23(b) Would Invite A Flood Of Vexatious Litigation.**

Construing Rule 23(c)(4) to allow certification of issue classes virtually at will, and without regard for the essential due-process protections of Rule 23(b), inevitably would result in a flood of shakedown class actions. The consequences for businesses; their owners, customers, and employees; and the judicial system as a whole will be troubling and far-reaching.

Defendants in class actions already face tremendous pressure to capitulate to what Judge Friendly termed "blackmail settlements." Henry J. Friendly, *Federal Jurisdiction: A General View* 120 (1973). The stakes of a class action, once it has been certified, immediately become so great that "even a complaint which by objective standards may have very little chance of success at trial has a settlement value to the plaintiff out of any proportion to its prospect of success at trial." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 740 (1975); *accord, e.g.*, *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 445 n.3 (2010) (Ginsburg, J., dissenting) ("A court's decision to certify a class * * * places pressure on the defendant to settle even unmeritorious claims."); *Coopers & Lybrand v. Livesay*, 437 U.S. 463,

476 (1978) ("Certification of a large class may so increase the defendant's potential damages liability and litigation costs that he may find it economically prudent to settle and to abandon a meritorious defense.").

Thus, it is unsurprising that businesses often yield to the hydraulic pressure generated by class certification to settle even meritless claims. *See, e.g.*, Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811, 812 (Dec. 2010) ("virtually all cases certified as class actions and not dismissed before trial end in settlement").

Moreover, the ripple effects of these lawsuits will be felt throughout the economy. Defending and settling the lawsuits—and all the cases in which absent class members may collaterally attack the judgments—would require defendants to expend enormous resources. These costs would not, however, be borne by business and governmental defendants alone. Rather, the vast majority of the expenses would likely be passed along to innocent customers and employees (or to taxpayers) in the form of higher prices and lower wages and benefits; and much of the remainder of the burden would fall on innocent investors.

## II. The District Court's Order Can Be Affirmed On The Alternative Ground That The Proposed Class Is Not Ascertainable.

Denial of class certification here was also appropriate for the alternative reason that the proposed class is not ascertainable. While the district court concluded otherwise based on a handful of decisions from other courts in this Circuit (E.R. 6-7), those courts' policy-driven holdings impermissibly subordinate defendants' due process rights to the improper motivation of promoting the class action device at all costs.

1. Two well-settled legal principles establish that a class action may not be certified when membership in the proposed class cannot be demonstrated by objective evidence. *First*, it is black-letter law that an individual plaintiff can obtain relief only by proving an injury and that a defendant must be given an opportunity to present every available defense. *Second*, the Rules Enabling Act forbids interpreting Rule 23 to "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b).

Rule 23 therefore cannot be interpreted to extend judicial relief to an individual who would be unable to establish the right to that relief in his or her own action. It follows that a class cannot be certified when

class membership is not "ascertainable"; *i.e.*, when the class would include individuals who could not establish their right to relief. Interpreting Rule 23 to authorize that result would deprive the defendant of a right to present a defense in violation of the Rules Enabling Act.

That result would also violate due process. The "fundamental requisite of due process of law is the opportunity to be heard." *Grannis v. Ordean*, 234 U.S. 385, 394 (1914). Due process thus requires not only that a plaintiff prove every element of his claim, but also that a defendant be given "'an opportunity to present every available defense.'" *Lindsey v. Normet*, 405 U.S. 56, 66 (1972) (quoting *Am. Sur. Co. v. Baldwin*, 287 U.S. 156, 168 (1932)); *see also*, *e.g.*, *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971) (recognizing that the "right to litigate the issues raised" in a case is "guaranteed * * * by the Due Process Clause").

If this case had been brought as an individual action, the plaintiff would have to prove that he purchased Mott's 100% Apple Juice bearing the challenged label. And due process would mandate, in turn, that the defendant be afforded the opportunity to mount a full defense to that

factual showing—including cross-examination and other opportunities to test the reliability of the plaintiff's claim. That is because "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970) (citing *ICC v. Louisville & Nashville R.R.*, 227 U.S. 88, 93-94 (1913)).

That due process requirement cannot be eliminated by combining multiple claims into a class action. The ability of putative class members to hold a defendant liable for a claim cannot depend on whether the case has been brought as a class action or an individual case. *E.g.*, *Philip Morris USA, Inc. v. Scott*, 131 S. Ct. 1, 4 (2010) (Scalia, J., in chambers) (suggesting that due process is violated if "individual plaintiffs who could not recover had they sued separately *can* recover only because their claims were aggregated with others' through the procedural device of the class action"); *Carrera v. Bayer Corp.*, 727 F.3d 300, 307 (3d Cir. 2013) (noting that "[i]f this were an individual claim, a plaintiff would have to prove at trial he purchased WeightSmart" and that a "defendant in a class action" has the same "due process right to raise individual challenges and defenses to

claims"). A "core concern of ascertainability" is therefore "that a defendant must be able to challenge class membership." *Carrera*, 727 F.3d at 309; *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1176 (11th Cir. 2010) ("The Rules Enabling Act * * * and due process * * * prevent[] the use of class actions from abridging the substantive rights of any party."). Put simply, if an individual did not purchase a defendant's product, he cannot be a member of the class and cannot hold the defendant liable.[5]

Moreover, class members must be identified through actual ***proof***, not simply by the say-so of a representative plaintiff or class attorney. That is so for two reasons. First, because proof by at least a preponderance of the evidence is the settled standard in American civil litigation. And second because, without a reliable and administratively

---

[5]    When (as here) a plaintiff seeks monetary damages, ascertainability further protects defendants by ensuring that any recovery to the class corresponds to the actual damages allegedly suffered by absent class members. A damages calculation that does not correspond to defendants' actual liability to the class violates due process. "[I]f a plaintiff class wins, any relief must be reasonably limited to those who are entitled to it." *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1091 (N.D. Cal. 2011); *see also, e.g., McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 231 (2d Cir. 2008) (noting that defendants have a "substantive right to pay damages reflective of their actual liability"), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

feasible method for identifying who is in a class, defendants will have no way to challenge the inclusion of individual class members—short of extensive individualized fact-finding and a mini-trial over each would-be class member's claim of membership. Those procedures would be unworkable and would quickly render the class "unmanageable," and plaintiffs therefore must demonstrate that there is an "objective, reliable way to ascertain class membership." *Xavier v. Philip Morris USA Inc.*, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011). As the Second Circuit recently put it, "[a] class is ascertainable when defined by objective criteria that are administratively feasible and when identifying its members would not require a mini-hearing on the merits of each case." *Brecher v. Republic of Argentina*, --- F.3d ----, 2015 WL 5438797, at *2 (2d Cir. Sept. 16, 2015) (quotation marks omitted).

Self-serving affidavits by putative class members attesting to their inclusion in the class do not suffice, because there would be no meaningful way to verify whether each claim is truthful and accurate or for the defendant to challenge those that are not—as due process requires. Numerous courts have explained that "[f]orcing [defendants] to accept as true absent persons' declarations that they are members of

the class, without further indicia of reliability, would have serious due process implications." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 594 (3d Cir. 2012); *see also, e.g.*, *Xavier*, 787 F. Supp. 2d at 1090 ("to accept [affidavits] without the benefit of cross examination" would "not be proper or just"); *Karhu v. Vital Pharm., Inc.*, 2014 WL 815253, at *3 (S.D. Fla. Mar. 3, 2014) ("Accepting affidavits of [product] purchases without verification would deprive [defendant] of its due process rights to challenge the claims of each putative class member."), *aff'd*, --- F. App'x ----, 2015 WL 3560722 (11th Cir. June 9, 2015); *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 269 (S.D. Fla. 2003) ("Although Plaintiffs suggested that class membership could be determined through affidavits and fact sheets, allowing such uncorroborated and self-serving evidence without giving Defendant an opportunity to challenge the class member's evidentiary submissions would likely implicate Defendant's due process rights.").

As a leading treatise has summarized, "[c]ourts have rejected proposals to employ class member affidavits and sworn questionnaires as substitutes for traditional individualized proofs" because such submissions "are, most importantly, not subject to cross-examination."

2 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 8:6 (11th ed. 2014).

**2.** Plaintiff did not demonstrate any objectively feasible way to identify putative class members here, but the district court refused to recognize that requirement—relying on the decisions of a handful of courts in this Circuit requiring only that "the class definition describes a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover." E.R. 6 (quoting *McCrary v. Elations Co.*, 2014 WL 1779243, at *8 (C.D. Cal. Jan. 13, 2014)).

The district court in *McCrary*, brushing aside the defendant's "due process right to defend against claims of class membership," declared it "enough" that the "class definition clearly defines the characteristics of a class member"; the court therefore permitted class members to "self-identify their inclusion via affidavits." 2014 WL 1779243, at *7-8. The *McCrary* court—like the other district courts that have followed suit—candidly announced its motivation for circumscribing defendants' due process rights: To pave the way for consumer class actions related to the purchase of small-dollar items. According to the court, "[i]f Defendant's

argument were correct, 'there would be no such thing as a consumer class action.'" *Id.* at *7 (quoting *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 535 (N.D. Cal. 2012)).[6]

That prediction is highly unlikely to come to pass: Commentators have been prophesizing the demise of the class action for decades, yet experience has shown otherwise.[7] More fundamentally, a court's policy preferences in favor of class actions cannot supersede a defendant's due process right to challenge the evidence used to prove class membership. Nor may a court expand the substantive rights of plaintiffs (or abrogate a defendant's right to present every available defense) in light of the

---

[6]    *Accord, e.g.*, *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 238 (N.D. Cal. 2014); *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *5 (C.D. Cal. Apr. 9, 2014); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013). The Seventh Circuit recently adopted this narrow definition of ascertainability as well, taking the view that "class treatment is often most needed" in "cases involving relatively low-cost goods or services." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 658 (7th Cir. 2015). *But see Brecher*, 2015 WL 5438797, at *2 (Second Circuit was "not persuaded" by the argument "that a class defined by reference to objective criteria is all that is required to satisfy ascertainability") (alterations and quotation marks omitted); *Karhu*, 2015 WL 3560722, at *2; *Carrera*, 727 F.3d at 307.

[7]    *See, e.g.*, Richard L. Marcus, *They Can't Do That, Can They? Tort Reform Via Rule 23*, 80 Cornell L. Rev. 858, 858 (1995) (noting that "[i]n 1988 the New York Times reported that class actions appeared to be dying" and that they had "kind of petered out") (quotation marks omitted).

Rules Enabling Act, which forbids interpreting Rule 23 to "abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b).

The policy concern animating those district courts' decisions, moreover, is misguided. The decisions appear to accept on faith that certification of consumer class actions involving low-cost consumer items will benefit the absent class members. But as Congress found a decade ago, "[c]lass members often receive little or no benefit from class actions, and are sometimes harmed." Class Action Fairness Act of 2005, Pub. L. No. 109-2 § 2(a)(3), 119 Stat. 4.

Recent empirical evidence confirms the accuracy of Congress' finding, especially when the members of a class are not ascertainable, and therefore cannot be given direct notice. Indeed, in connection with the settlement of a class action involving purchasers of Duracell batteries, a senior consultant at Kurtzman Carson Consultants ("KCC"), a settlement administrator, explained that based on "hundreds of class settlements, it is KCC's experience that consumer class action settlements with little or no direct mail notice **will almost always have a claims rate of less than one percent**." *See* Decl. of Deborah McComb ¶ 5*,* Dkt. No. 156, *Poertner v. Gillette Co.*, No. 6:12-cv-00803

(M.D. Fla. Apr. 22, 2014) (emphasis added), available at http://blogs. reuters.com/alison-frankel/files/2014/05/duracellclassaction-mccomb declaration.pdf.

The settlements reviewed involved products "such as toothpaste, children's clothing, heating pads, gift cards, an over-the-counter medication, a snack food, a weight loss supplement and sunglasses." *Id.* And the median claims rate for those cases was a miniscule ".023%"— which is roughly 1 claim per ***4,350*** class members. *Id.* To put it another way, in the mine-run class settlement involving products for which class members are not readily identifiable and direct notice is largely impossible, approximately ***99.98%*** of class members receive ***no benefit at all***.

Because information regarding the distribution of class settlements is not usually available to the public, this rare glimpse into actual claims administration data is significant.[8] It confirms that the

---

[8] The limited settlement data that are publicly available further confirm that very few putative class actions deliver tangible benefits to more than a small fraction of class members. In a recent study conducted at the request of the Chamber's Institute for Legal Reform, a team of lawyers (including some of the authors of this brief) undertook an empirical analysis of 148 consumer and employee class actions filed in or removed to federal court in 2009. *See* Mayer Brown LLP, *Do Class*

only true beneficiaries of the certification and settlement of consumer class actions in general—and especially of unascertainable classes—are the lawyers (both on the plaintiffs' and the defense side).

Even if ascertainability were not required by due process—and it is—the absence of any discernible benefit to class members when those members cannot be identified is further reason to demand that ascertainability requirements be applied—for example, in the context of the inquiry into superiority. As this Court has long cautioned, "[w]henever the principal, if not the only, beneficiaries to the class action are to be the attorneys for the plaintiffs and not the individual class members, a costly and time-consuming class action is hardly the superior method for resolving the dispute." *In re Hotel Tel. Charges*, 500 F.2d 86, 91 (9th Cir. 1974); *see also, e.g.*, *In re POM Wonderful LLC*,

---

*Actions Benefit Class Members?: An Empirical Analysis of Class Actions* (Dec. 11, 2013), *available at* http://www.instituteforlegalreform.com/ resource/do-class-actions-benefit-class-members/. Of the six cases in the data set for which settlement distribution data was public, "five delivered funds to only miniscule percentages of the class: 0.000006%, 0.33%, 1.5%, 9.66%, and 12%." *Id.* at 2 (emphasis omitted). (The sixth was a highly unusual outlier involving claims about the Bernie Madoff Ponzi scheme, where "each class member's individual claim was worth, on average, over $2.5 million"—leading to a claims rate of almost 99%. *Id.* at 10-11 & n.20.) In an unascertainable class for which direct notice to absent class members is impossible, the distribution percentages are likely to be even lower, as indicated by KCC's data.

2014 WL 1225184, at *6 n.8 (C.D. Cal. Mar. 25, 2014) (noting that the "administrative difficulties [in identifying class members] implicate not only the threshold ascertainability question, but also manageability and superiority concerns") (citing *Red v. Kraft Foods, Inc.*, 2012 WL 8019257, at *4 (C.D. Cal. Apr. 12, 2012)); *Astiana v. Ben & Jerry's Homemade, Inc.*, 2014 WL 60097, at *13 (N.D. Cal. Jan. 7, 2014) (because "plaintiff has not identified an ascertainable class, * * * a class action is plainly not a superior method of adjudication of the controversy").[9]

---

[9] As Mott's has explained in its brief (at 54-55), there are also ready alternatives to private enforcement for curbing alleged wrongdoing in connection with consumer products.

## CONCLUSION

The district court's judgment should be affirmed.

Dated: October 9, 2015                    Respectfully submitted,

                                          /s/ *Andrew J. Pincus*

Kate Comerford Todd                       Andrew J. Pincus
Warren Postman                            Archis A. Parasharami
U.S. CHAMBER LITIGATION                    Daniel E. Jones
   CENTER, INC.            MAYER BROWN LLP
1615 H Street, N.W.                       1999 K Street, N.W.
Washington, DC 20062                      Washington, DC 20006
(202) 463-5337                            (202) 263-3000

*Counsel for* Amicus Curiae *the Chamber of Commerce
of the United States of America*

- 35 -

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App.
    P. 29(d) and 32(a)(7)(B) because:

    ☒   this brief contains <u>6857</u> words, excluding the parts of the
        brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    ☐   this brief uses a monospaced typeface and contains _____
        lines of text, excluding the parts of the brief exempted by
        Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App.
    P. 32(a)(5) and the type style requirements of Fed. R. App. P.
    32(a)(6) because:

    ☒   this brief has been prepared in a proportionally spaced
        typeface using <u>Microsoft Word 2007</u> in <u>14-point Century
        Schoolbook</u>, *or*

    ☐   this brief has been prepared in a monospaced spaced
        typeface using *(state name and version of word processing
        program)* _____ with *(state number of
        characters per inch and name of type style)* _____

        _____.

                              <u>/s/ *Andrew J. Pincus*          </u>
                              Andrew J. Pincus
                              *Counsel for* Amicus Curiae

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on October 9, 2015. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Andrew J. Pincus*
Andrew J. Pincus
*Counsel for* Amicus Curiae